```
            IN THE UNITED STATES DISTRICT COURT
         FOR THE EASTERN DISTRICT OF PENNSYLVANIA
```

HELEN MANN,                          :    CONSOLIDATED UNDER
                                     :    MDL 875
    Plaintiff,                      :
                                     :
  v.                                 :    Transferred from the Southern
                                     :    District of Illinois
                                     :    (Case No. 94-04219)
                                     :
ANCHOR PACKING COMPANY,              :
ET AL.,                              :    E.D. PA CIVIL ACTION NO.
                                     :    2:08-89372-ER
    Defendants.                     :

## O R D E R

**AND NOW**, this **30th** day of **January, 2014**, it is hereby **ORDERED** that the Motion for Summary Judgment of Defendant Westinghouse Electric Corporation (Doc. No. 131) is **GRANTED in part; DENIED in part**, with leave to refile in the transferor court after remand.[1]

---

[1] This case was transferred in October of 2008 from the United States District Court for the Southern District of Illinois to the United States District Court for the Eastern District of Pennsylvania as part of MDL-875.

    Plaintiff Helen Mann alleges that Decedent J.W. Heggie ("Decedent" or "Mr. Heggie") worked as a carpenter from approximately 1971 to 1984. Defendant Westinghouse Electric Corporation ("Westinghouse") manufactured turbines and switchgear. Plaintiff has alleged that Decedent was exposed to asbestos from Westinghouse turbines and/or switchgear at the Texaco Refinery in Illinois in 1968, and at the Marathon Refinery in Illinois during the period 1970 to 1978.

    Plaintiff alleges Decedent developed bilateral asbestos-related pleural disease and lung cancer as a result of his exposure to asbestos. Mr. Heggie passed away in April of 2002 and was never deposed in connection with this action. Plaintiff relies on the depositions and declarations of Decedent's coworkers in support of her response.

Plaintiff has brought claims against various defendants. Defendant Westinghouse has moved for summary judgment, arguing that there is insufficient product identification evidence to establish causation with respect to its product(s). The parties agree that Illinois law applies.

**I.   Legal Standard**

   A.   Summary Judgment Standard

Summary judgment is appropriate if there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A motion for summary judgment will not be defeated by 'the mere existence' of some disputed facts, but will be denied when there is a genuine issue of material fact." Am. Eagle Outfitters v. Lyle & Scott Ltd., 584 F.3d 575, 581 (3d Cir. 2009) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-248 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation, and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248.

In undertaking this analysis, the court views the facts in the light most favorable to the non-moving party. "After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." Pignataro v. Port Auth. of N.Y. & N.J., 593 F.3d 265, 268 (3d Cir. 2010) (citing Reliance Ins. Co. v. Moessner, 121 F.3d 895, 900 (3d Cir. 1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, meeting this obligation shifts the burden to the non-moving party who must "set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 250.

   B.   The Applicable Law

The parties have agreed that Illinois substantive law applies. Therefore, this Court will apply Illinois law in deciding Westinghouse's Motion for Summary Judgment. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938); see also Guaranty Trust Co. v. York, 326 U.S. 99, 108 (1945).

C.  Product Identification/Causation Under Illinois Law

This Court has previously considered the product identification/causation standard under Illinois law . Most recently, it wrote in Krik v. BP America (No. 11-63473):

> In order to establish causation for an asbestos claim under Illinois law, a plaintiff must show that the defendant's asbestos was a "cause" of the illness. Thacker v. UNR Industries, Inc., 151 Ill.2d 343, 354 (Ill. 1992). In negligence actions and strict liability cases, causation requires proof of both "cause in fact" and "legal cause." Id. "To prove causation in fact, the plaintiff must prove medical causation, i.e., that exposure to asbestos caused the injury, and that it was the defendant's asbestos-containing product which caused the injury." Zickhur v. Ericsson, Inc., 962 N.E.2d 974, 983 (Ill. App. (1st Dist.) 2011)(citing Thacker, 151 Ill.2d at 354). Illinois courts employ the "substantial factor" test in deciding whether a defendant's conduct was a cause of a plaintiff's harm. Nolan v. Weil-McLain, 233 Ill.2d 416, 431 (Ill. 2009)(citing Thacker, 151 Ill.2d at 354-55). Proof may be made by either direct or circumstantial evidence. Thacker, 151 Ill.2d at 357. "While circumstantial evidence may be used to show causation, proof which relies upon mere conjecture or speculation is insufficient." Id. at 354
>
> In applying the "substantial factor" test to cases based upon circumstantial evidence, Illinois courts utilize the "frequency, regularity, and proximity" test set out in cases decided by other courts, such as Lohrmann v. Pittsburgh Corning Corp., 782 F.2d 1156 (4th Cir. 1986). Thacker, 151 Ill.2d at 359. In order for a plaintiff relying on circumstantial evidence "to prevail on the causation issue, there must be some evidence that the defendant's asbestos was put to 'frequent' use in the [Plaintiff's workplace] in 'proximity' to where the [plaintiff] 'regularly' worked." Id. at 364. As part of the "proximity" prong, a plaintiff must be able to point to "sufficient evidence tending to show that [the defendant's] asbestos was actually inhaled by the [plaintiff]." This "proximity" prong can be established under Illinois law

3

by evidence of "fiber drift," which need not be introduced by an expert. Id. at 363-66.

In a recent case (involving a defendant Ericsson, as successor to Anaconda), an Illinois court made clear that a defendant cannot obtain summary judgment by presenting testimony of a corporate representative that conflicts with a plaintiff's evidence pertaining to product identification - specifically noting that it is the province of the jury to assess the credibility of witnesses and weigh conflicting evidence. See Zickuhr, 962 N.E.2d at 985-86. In Zickhur, the decedent testified that he worked with asbestos-containing Anaconda wire from 1955 to 1984 at a U.S. Steel facility, and that he knew it was asbestos-containing because the wire reels contained the word "asbestos" on them - and the word "asbestos" was also contained on the cable and its jacket. A co-worker (Scott) testified that, beginning in the 1970s, he had seen cable spools of defendant Continental (which had purchased Anaconda) that contained the word "asbestos" on them. A corporate representatives (Eric Kothe) for defendant Continental (testifying about both Anaconda and Continental products) provided contradictory testimony that Anaconda stopped producing asbestos-containing cable in 1946 and that the word "asbestos" was never printed on any Anaconda (or Continental) cable reel. A second corporate representative (Regis Lageman) provided testimony, some of which was favorable for the plaintiff; specifically, that Continental produced asbestos-containing wire until 1984, that asbestos-containing wires were labeled with the word "asbestos," and that, although defendant did not presently have records indicating where defendant had sent its products, U.S. Steel had been a "big customer" of a certain type of defendant's wire that contained asbestos.

After a jury verdict in favor of the plaintiff, Defendant appealed, contending that (1) there was no evidence that defendant's cable/wire contained asbestos, and (2) there was no evidence that defendant's cable/wire caused decedent's mesothelioma. The appellate court affirmed the trial court (and upheld a jury verdict in favor of the plaintiff),

> holding that the issues of whether the cable and wire decedent worked with contained asbestos, and whether the defendant's cable and wire were the cause of the decedent's mesothelioma, were questions properly sent to the jury for determination. The appellate court noted that "the jury heard the evidence and passed upon the credibility of the witnesses and believed the plaintiff's witnesses over... Kothe." Id. at 986.

2012 WL 2914244, at *1.

In connection with another Defendant's motion/argument in that same case (Krik), this Court also wrote:

> Defendant urges this Court to reconsider the standard previously set forth, arguing that Illinois courts employ the Lohrmann "frequency, regularity, and proximity" test in all cases, and not just those in which a plaintiff relies upon circumstantial evidence. Specifically, Defendant cites to Zickhur and Nolan in support of this argument. The Court has considered Defendant's argument and the cases upon which it relies.
>
> The Court reiterates that Thacker is a decision of the Supreme Court of Illinois that directly addresses the product identification standard for asbestos cases brought under Illinois law. In Thacker, the decedent had testified to opening bags of asbestos of a kind not supplied by the defendant and had testified that he did not recall seeing the defendant's product anywhere in the facility. The only evidence identifying the defendant's product was testimony of a co-worker that the defendant's product had been seen in a shipping and receiving area of the facility, although the co-worker had not witnessed the product in the decedent's work area. In assessing the sufficiency of the plaintiff's evidence, the Court applied the "frequency, regularity, and proximity" test, noting that "plaintiffs in cases such as this have had to rely heavily upon circumstantial evidence in order to show causation." 151 Ill.2d at 357. After discussing the Lohrmann "frequency, regularity, and proximity" test, the Thacker court set forth its rationale for applying the test to the evidence at hand, noting that "[t]hese

5

requirements attempt to seek a balance between the needs of the plaintiff (by recognizing the difficulties of proving contact) with the rights of the defendant (to be free from liability predicated upon guesswork)." Id. at 359. This Court notes that the rationale of the Thacker court would not apply where a plaintiff relied upon direct evidence, as there would be no danger of "guesswork" and little (if any) difficulty of proving contact. The Court therefore concludes, as it has previously, that Thacker indicates that the "frequency, regularity, and proximity" test is applicable in cases in which a plaintiff relies on circumstantial evidence. This is not inconsistent with the holding of Lohrmann. See Lohrmann, 782 F.2d at 1162.

Defendant argues that the decision of the Supreme Court of Illinois in Nolan makes clear that the "frequency, regularity, and proximity" test is applicable in all cases, regardless of whether a plaintiff is relying on direct or circumstantial evidence. Nolan, however, did not directly address the product identification standard for asbestos cases under Illinois law. Rather, the question considered by the court was whether the trial court erred in excluding from trial all evidence of a plaintiff's exposure to asbestos from other manufacturers' products when a sole defendant was remaining at trial. Nolan, 233 Ill.2d at 428. In deciding that issue, the court rejected the intermediary appellate court's conclusion that, when the "frequency, regularity, and proximity" test is met, legal causation has been established. Although it is true that Nolan makes reference to the Lohrmann test without clarifying that it is only applicable in cases based upon circumstantial evidence, the Nolan court was not deciding whether the trial court had applied the proper product identification standard, and it cannot be fairly or accurately said that Nolan sets forth the Illinois standard for product identification, nor that it stands for the proposition that the "frequency, regularity, and proximity" test is applicable in all cases. Nothing in Nolan indicates that the Supreme Court of Illinois intended to alter the standard it set forth in Thacker.

Finally, the Court has considered Defendant's argument that Zickhur indicates that the "frequency,

6

> regularity, and proximity" test is applicable in all
> cases, regardless of the type of evidence relied upon
> by a plaintiff. As an initial matter, the Court notes
> that a decision from an intermediary appellate court
> will not, by itself, displace a rule of law issued by
> the highest court of the state. However, Zickhur does
> not contradict Thacker. Rather, the Zickhur court makes
> clear that the "frequency, regularity, and proximity"
> test is not always applicable – noting that "the
> 'frequency, regularity and proximity' test may be
> used...[and] that a plaintiff can show exposure to
> defendant's asbestos" with it. 962 N.E.2d at 986
> (emphasis added). Moreover, while it is true that
> Zickhur involved some pieces of direct evidence, it is
> worth noting that the court's resolution of the issue
> of the sufficiency of the evidence to withstand a
> motion for a directed verdict turned on its analysis of
> circumstantial evidence, in the context of direct and
> conflicting evidence presented by parties on both sides
> of the case. Therefore, it cannot be fairly or
> accurately said that Zickhur sets forth the Illinois
> standard for product identification, nor that it stands
> for the proposition that the "frequency, regularity,
> and proximity" test is applicable in all cases.

2012 WL 2914246, at *1.

## II. Defendant Westinghouse's Motion for Summary Judgment

### A. Defendant's Arguments

<u>Product Identification / Causation</u>

      Defendant Westinghouse argues that there is insufficient product identification evidence to support a finding of causation with respect to its product(s). In support of this assertion, it relies upon the affidavit of former Westinghouse employee Douglas Ware (Def. Ex. C, Doc. No. 131-5), who provides testimony that the Westinghouse turbines at issue were sold without thermal insulation or metal lagging and that, any such insulation or lagging that was later applied to the turbines was supplied and applied by someone other than Westinghouse.

      In its reply, Defendant asserts that Plaintiff's evidence fails to create a triable issue of material fact with respect to switchgear because Plaintiff cannot prove that

7

asbestos dust attributable to Westinghouse was emitted when the electricians "blew out" Defendant's switchgear with compressed air. In addition, Defendant argues that there is no evidence that any such exposure was more than a "de minimis" exposure that was not significant enough to be a "substantial factor" in causing his illness.

Objections to Evidence

In its motion and reply brief, Westinghouse objects to various pieces of Plaintiff's evidence. Specifically, with respect to expert testimony, Westinghouse contends that (1) expert Wineman is not qualified to testify as an expert, (2) Plaintiffs have not established that the testimony of experts Kenoyer and Garza is reliable, (3) Plaintiff's reliance on two declarations of expert Huttner violate this Court's Order dated September 17, 2013 (hereinafter referred to as the "September 17th Order") because (a) they were not timely disclosed, and (b) were not based on facts newly disclosed in discovery after the September 17th Order.

With respect to fact witnesses, Westinghouse contends that Plaintiff should not be permitted to rely upon the testimony of co-worker William Simmons because he was not disclosed by Plaintiffs properly for various reasons, including Defendant's contention that he was not disclosed until the last day of discovery.

### B. Plaintiff's Arguments

Product Identification / Causation

In response to Defendant's assertion that there is insufficient product identification evidence to establish causation with respect to its products, Plaintiff points to, inter alia, the following evidence, summarized in pertinent part:

- Deposition of Vernon Hilderbrand
  Mr. Hilderbrand worked with Decedent at the Marathon refinery in 1970-78. He provides testimony that Decedent was exposed to respirable dust from block, blanket, and spray-on insulation used on Westinghouse turbines.

  (Pl. Ex. 4, Doc. No. 132-6)

8

- <u>Declaration and Deposition of William LaPointe</u>
  Mr. LaPointe provides testimony that (1) materials used on turbine systems often contained asbestos, and (2) the sound deadening materials sprayed in the Westinghouse turbine enclosures would sometimes deteriorate and create dust.

  (Pl. Exs. 5 and 19, Doc. Nos. 132-7 and 132-21)

- <u>Declaration and Deposition of William Simmons</u>
  Mr. Simmons provides testimony that he and Decedent worked in close proximity to electricians using air hoses to blow dust out of high voltage switchgear made by Westinghouse. He provides testimony that he and Decedent worked "within feet" of electricians drilling holes in brown insulating board which he believed contained asbestos, and installing it inside of Westinghouse electrical equipment.

  (Pl. Exs. 8-9, Doc. Nos. 132-10 and 132-11)

- <u>Misc. Westinghouse Turbine-Related Documents</u>
  Plaintiff cites to various pieces of evidence, which she contends pertain to "Asbestos Content of Westinghouse Turbines at Marathon" and establish:

    - Westinghouse specifications for the turbines at the Marathon facility "required" the use of asbestos sheet packing.

    - Asbestos sheet packing was specified for use on the steam, feed water and oil pipe lines.

    - Westinghouse specifications for the turbines at the Marathon facility "required" the use of asbestos gaskets.

    - During the 1950s and 1960s, Westinghouse's turbine insulation process specifications "required" the use of asbestos-containing insulation.

9

- Westinghouse did not generally adopt "asbestos-free insulation materials" until after March 27, 1973, when a memorandum was issued temporarily approving "new asbestos-free insulation materials."

- "Before the 1973 memoranda, Westinghouse turbine specifications routinely required asbestos" (Pl. Opp. at 4.), as evidenced by (1) a 1966 Westinghouse turbine insulation "process specification" for the "Application of Block and Pipe Covering Thermal Insulation," which called for the use of two Westinghouse materials specifications for "Heat insulating block" numbered 7308 and 7309, each of which was made from materials that included asbestos, and (2) a 1962 Westinghouse turbine insulation "process specification" for the "Application of Block and Molded Insulation" to turbine cylinders, which called for the use of asbestos-containing materials.

  (Pl. Exs. 12-18, Doc. Nos. 132-14 to 132-20)

- <u>Misc. Westinghouse Switchgear-Related Documents</u>
  Plaintiff cites to various pieces of evidence, which she contends pertain to "Asbestos Content of Westinghouse Switchgear" and establish:

  - All switchgear in industrial and large commercial settings over 440 volts from 1945 to the early 1980s contained asbestos, including asbestos-containing arc chutes. (Pl. Ex. 144, Doc. No. 132-58, Dep. of Expert Samuel Wineman.)

  - DH and DHP series switchgear contained asbestos. Westinghouse switchgear used to power large motors and other large equipment at industrial facilities such as oil refineries was the DH or DHP

10

- series. (Pl. Ex. 124, Doc. No. 132-46, Dep. of Westinghouse corporate representative Raymond McMullen.)

- The switchgear Decedent was exposed to was in an industrial setting and was over 440 volts, as evidenced by: (1) co-worker William Simmons's observations of the appearance of the switchgear (inside panel boxes about 3 feet wide by 6 feet high, which were arranged side by side in banks, with one bank containing between ten and fifteen panel boxes), (2) the type of equipment the switchgear was used to power (pumps and other machinery at the powerhouse), and (3) the switchgear was blown out with air hoses during maintenance.

- There was widespread use of asbestos insulation for switchgear applications in industrial and large commercial facilities from before 1950 through the 1980s.

- Asbestos was the material of choice in industrial and commercial applications.

Objections to Evidence

In response to Defendant's objections, Plaintiff contends that fact witness William Simmons was timely disclosed on October 1, 2013 and that Westinghouse was present at Mr. Simmons's deposition thereafter, where it had the opportunity to depose Mr. Simmons.

**C. Analysis**

Objections to Evidence

As a preliminary matter, the Court notes that it has reviewed Defendant's numerous objections. The Court need not address each and every objection herein and instead addresses only as appropriate those objections that are potentially outcome-determinative (i.e., could entitle Defendant to summary judgment).

11

Defendant contends that Plaintiff should not be permitted to rely upon the testimony of co-worker William Simmons because Mr. Simmons was not disclosed by Plaintiffs properly for various reasons, including Defendant's contention that he was not disclosed until the last day of discovery. The Court has confirmed that Mr. Simmons was timely disclosed in accordance with this Court's September 17th Order. See Doc. Nos. 127 and 128. Accordingly, Plaintiff will be permitted to rely upon Mr. Simmons's testimony in opposing Defendant's summary judgment motion.

With respect to Defendant's other objections (which, in this case, pertain solely to expert testimony), the Court need not reach them in order to resolve Defendant's motion. The Court notes, as it has routinely done in this MDL, that any Daubert issues are more properly addressed by the trial court. See, e.g., Bouchard v. CBS Corp., No. 11-66270, 2012 WL 5462612 (E.D. Pa. Oct. 2, 2012)(Robreno, J.); Pray v. AC and S, Inc., No. 08-91884 (E.D. Pa. Dec. 17, 2012)(Robreno, J.) (Order on motion for summary judgment of Defendant General Electric Company); Millsaps v. Aluminum Co. of America, No. 10-84924, 2013 WL 5544053 (E.D. Pa. Aug. 8, 2013)(Robreno, J.).

Having determined that Plaintiff may rely upon Mr. Simmon's declaration in opposing Defendant's motion for summary judgment, the Court turns next to the sufficiency of Plaintiff's evidence.

Product Identification / Causation

Plaintiff has alleged that Decedent was exposed to asbestos from (i) external insulation used in connection with Westinghouse turbines, and (ii) Westinghouse switchgear.

(i) Insulation / Turbines

With respect to external insulation used in connection with turbines, Plaintiff is relying on both direct evidence and circumstantial evidence to establish causation. However, even if it were assumed that Plaintiff need not satisfy the "frequency, regularity, and proximity" test, see Thacker, 151 Ill.2d at 359, Plaintiff's evidence is insufficient. Therefore, for purposes of the analysis herein, the Court will utilize this more lenient standard.

There is evidence that Decedent was exposed to respirable dust from block, blanket, and spray-on insulation used on Westinghouse turbines. There is evidence that materials used on turbine systems often contained asbestos, and that the sound deadening materials sprayed in the Westinghouse turbine enclosures would sometimes deteriorate and create dust. There is evidence that During the 1950s and 1960s, Westinghouse's turbine insulation process specifications "required" the use of asbestos-containing insulation. There is evidence that Westinghouse did not generally adopt "asbestos-free insulation materials" until after March 27, 1973. Importantly, however, there is no evidence that Decedent was exposed to asbestos from insulation. Even assuming that it is a fact that Westinghouse issued specifications that "required" the use of asbestos-containing insulation, this evidence does not establish that any insulation to which Decedent was exposed in connection with Westinghouse turbines actually contained asbestos – and, instead, establishes only that this was a possibility. Similarly, even assuming that it is a fact that Westinghouse did not generally adopt "asbestos-free insulation materials" until after March 27, 1973, this does not establish that any insulation to which Decedent was exposed in connection with Westinghouse turbines actually contained asbestos – and, instead, establishes only that this was a possibility. Therefore, even when construing the evidence in the light most favorable to Plaintiff, no reasonable jury could conclude from the evidence that Decedent was exposed to asbestos for which Westinghouse is responsible such that it was a "substantial factor" in the development of his illness. Nolan, 233 Ill.2d at 431; Thacker, 151 Ill.2d at 354-55. This is true regardless of whether or not Illinois law recognizes the so-called "bare metal defense" – an issue this Court need not reach in connection with this alleged source of exposure. Therefore, summary judgment in favor of Defendant Westinghouse is warranted with respect to this alleged source of exposure. Id.; Anderson, 477 U.S. at 248.

(ii) Switchgear

With respect to switchgear, Plaintiff is relying primarily on direct evidence (rather than circumstantial evidence) to establish causation. Therefore, he need not satisfy the "frequency, regularity, and proximity" test. See Thacker, 151 Ill.2d at 359.

13

---

Plaintiff alleges exposure to asbestos from Westinghouse switchgear through several different sources/ mechanisms – none of which is clearly defined. The Court attempts to analyze the sufficiency of Plaintiff's evidence despite the poorly defined sources of alleged exposure.

There is evidence that Decedent worked in close proximity to electricians using air hoses to blow dust out of high voltage switchgear made by Westinghouse. There is evidence that all switchgear in industrial and large commercial settings over 440 volts from 1945 to the early 1980s contained asbestos, including asbestos-containing arc chutes. There is evidence that DH and DHP series switchgear contained asbestos. There is evidence that Westinghouse switchgear used to power large motors and other large equipment at industrial facilities such as oil refineries was the DH or DHP series. There is evidence of widespread use of asbestos insulation for switchgear applications in industrial and large commercial facilities from before 1950 through the 1980s. There is evidence that asbestos was the material of choice in industrial and commercial applications. Even when construing this evidence in the light most favorable to Decedent, it is insufficient because it does not establish that Decedent was exposed to respirable dust from switchgear that contained asbestos. This is because there is no evidence that the switchgear blown out near Decedent was (1) over 440 volts, or (2) was DH or DHP series switchgear, or (3) was used to power large motors or other large equipment.

Plaintiff attempts to establish that the switchgear dust to which Decedent was exposed contained asbestos by asserting that the switchgear Decedent was exposed to was in an industrial setting and was over 440 volts. She contends this is evidenced by: (1) co-worker William Simmons's observations of the appearance of the switchgear (inside panel boxes about 3 feet wide by 6 feet high, which were arranged side by side in banks, with one bank containing between ten and fifteen panel boxes), (2) the type of equipment the switchgear was used to power (pumps and other machinery at the powerhouse), and (3) the switchgear was blown out with air hoses during maintenance. However, there is nothing in the record to establish that the appearance of the switchgear meant it could only be asbestos-containing. There is no evidence in the record to support the assertion that the type of equipment the switchgear at issue was used to power was of the type that contained asbestos; and, in fact, Plaintiff asserts that Decedent was exposed to "pumps and other machinery," while

14

the evidence supporting an inference of asbestos content is limited to "large motors or other large equipment" – such that Plaintiff has not established Decedent was exposed to "large motors or other large equipment." Finally, Plaintiff has failed to provide evidence that supports her assertion that the fact that switchgear was blown out with air hoses means it was asbestos-containing switchgear.

The closest Plaintiff comes to establishing a switchgear-related asbestos exposure for which Defendant Westinghouse could be liable is found in Plaintiff's evidence from co-worker Simmons that Decedent worked "within feet" of electricians drilling holes in brown insulating board which Simmons believed contained asbestos, and installing it inside of Westinghouse electrical equipment. Because there is no evidence that Defendant manufactured or supplied the insulating board, Defendant can only face liability if Illinois does not recognize the so-called "bare metal defense."

The Court has reviewed Illinois law on this issue and has determined that it has not been fully and squarely addressed by any appellate court in Illinois in the context of asbestos litigation. As such, there is no clear statement of Illinois law on the issue. Whether Illinois law recognizes this defense (i.e., whether Illinois law holds a switchgear manufacturer liable for component parts incorporated into its product which it neither manufactured nor supplied) is a matter of policy. A court situated in Illinois is closer to – and has more familiarity with – Illinois law and policy. As such, rather than predicting what the Supreme Court of Illinois would do, the Court deems it appropriate to remand this case for a court in Illinois to decide this issue. See, e.g., Faddish v. CBS Corp., No. 09-70626, 2010 WL 4159238 (E.D. Pa. Oct. 22, 2010) (Robreno, J.); Pray v. AC and S, Inc., No. 08-91884 (Dec. 17, 2012) (Robreno, J.) (Order on motion for summary judgment of Defendant Westinghouse Electric Corporation). Accordingly, summary judgment in favor of Defendant on grounds of insufficient evidence of product identification/ causation is denied with respect to alleged asbestos exposure arising from switchgear, with leave to refile in the transferor court after remand.

### D. Conclusion

Defendant's motion for summary judgment is granted with respect to alleged asbestos exposure arising from insulation used in connection with turbines because Plaintiff has failed to

15

E.D. Pa. No. 2:08-89372-ER       **AND IT IS SO ORDERED.**


EDUARDO C. ROBRENO, J.

identify sufficient evidence to support a finding of causation with respect to that alleged exposure.

    Defendant's motion for summary judgment is denied with respect to alleged asbestos exposure arising from switchgear (with leave to refile in the transferor court) because no Illinois appellate court has yet addressed the availability of the so-called "bare metal defense" under Illinois law.

16